**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM ALLEN, GENA RUSZECKI, DIANE MYERS, and GABRIEL GREEN on behalf of herself, all others similarly situated and the general public,<br><br>        Plaintiff,<br>    vs.<br><br>NELSON BACH USA LTD, a Massachusetts Corporation.<br><br>        Defendant. | Case No.: 3:12-CV-00495 L (NLS)<br>Filed:  February 28, 2012<br><u>CLASS ACTION</u><br><br>**THIRD AMENDED COMPLAINT FOR:**<br>1. **VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT [CIV. CODE §§ 1750, *et seq.*]**<br>2. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW [BUS. & PROF. CODE §§ 17200, *et seq.*]**<br>3. **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW [BUS & PROF. CODE §§ 17500, *et seq.*]**<br>4. **BREACH OF EXPRESS WARRANTY** |

5. **BREACH OF IMPLIED WARARANTY OF MERCHANTABILITY**
6. **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT [15 U.S.C. §§ 2301, *et seq.*]**
7. **UNJUST ENRICHMENT**

DEMAND FOR JURY TRIAL

Plaintiff Gena Ruszecki[1] on behalf of herself, all others similarly situated, and the general public ("Plaintiffs"), allege against defendant Nelson Bach USA Ltd. ("Defendant"). Plaintiffs allege the following upon their own knowledge, or where there is no personal knowledge, upon information and belief and the investigation of their counsel:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and is a class action where Plaintiff, a member of the class, is from a different state than Defendant. On information and belief, more than two-thirds of the members of the class are citizens of a state different from the Defendant.

2. This Court also has original jurisdiction over the federal claim under the Magnuson-Moss Warranty Act pursuant to 15 U.S.C. § 2310(d)(1)(B).

3. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

---

[1] Plaintiffs Kim Allen, Diane Myers, and Gabriel Green have been voluntarily dismissed from this action.

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

4.      Personal jurisdiction derives from the fact that the Defendant conducts business within the State of California and within this judicial district.

5.      Venue is proper within this district pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including purchases and sales giving rise to this action, occurred in this district and because Defendant:

    (i)      is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

    (ii)     does substantial business in this district;

    (iii)    advertises to consumers residing in this district; and,

    (iv)    is subject to personal jurisdiction in this district.

## THE PARTIES

6.      Plaintiff Gena Ruszecki is a resident of Valley Village, California, who purchased one or more of the Products for personal or household use during the class period and not for resale or distribution.

7.      Defendant Nelson Bach USA Ltd is a Massachusetts corporation that maintains its principal place of business, corporate headquarters, and residence in Massachusetts.

8.      Defendant markets, distributes and sells homeopathic products throughout the United States.   This complaint concerns Defendant's sales of homeopathic products known as Original Rescue Remedy Drops (10ml and 20ml), Rescue Remedy Spray (7ml and 20ml), Rescue Cream, Rescue Pastilles, Rescue Sleep Melts, Rescue Gum, Rescue 4 Kids, and all iterations/variations of the aforementioned products (collectively, the "Products").  **Exhibit 1** to this Complaint has a more through description of the Products, including pictures.

9.      During the class period, Defendant regularly and continually targeted California consumers for sales of its Products, and derived substantial sales revenue from within the forum and doing business in this state.

10.     For example, the Products are available for sale to California consumers through their prominent on-the-shelf presence in numerous stores in this forum and throughout this state.

11.     Sales of the Products in California exceed Defendant's Product sales in any other state.

12.     Defendant also owns and operates fully interactive web sites where a consumer anywhere in the United States can purchase the Products directly from Defendant at: www.nelsonsnaturalworld.com and www.rescueremedy.com.

13.     Defendant's websites are aimed at a California audience, with the goal of exploiting California's substantial consumer base for purposes of financial gain.

14.     Through Product literature in California stores, Defendant offers to send any consumer who calls their toll-free (800) number or visits their rescueremedy.com web site, a free reference chart for matching Defendant's Products "with the conditions for which they are recommended." *See* **Exhibit 2** (copies of leaflets distributed to consumers through stand-alone Product displays in stores).

15.     Based on all facts available to Plaintiff at this time, personal jurisdiction is present over Defendant in this forum. *See Snowey v. Harrah's Entertainment*, 35 Cal. 4th 1054, 1063 (2005); *Coremetrics, Inc. v. Atomatic Park.com, LLC*, 370 F. Supp. 2d 1013, 1017 (N.D. Cal. 2005).

## BACKGROUND

16.     Homeopathic medicine allegedly stimulates the body's ability to heal itself by providing very small doses of highly diluted substances.  However, there is

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

little evidence that homeopathy is effective, much less that people understand homeopathic principles.[2]

17.     Homeopathy is premised on two main principles; the principle of similars and the principle of dilutions.  Under the "principle of similars" a disease can be cured by a substance that produces similar symptoms in healthy people. Under the "principle of dilutions" the *lower* the dose of the medication, the *greater* its effectiveness.[3]

18.     In highly diluted remedies, however, there is a very low probability that even a single molecule of the original substance is present in the Product.  For example, a level of 12C dilution is the equivalent to a pinch of salt in both the North and South Atlantic Oceans.[4]  According to homeopathy, the more diluted an ingredient, the more effective it becomes.

19.     In addition, Defendant is marketing its product for ailments that are not "diseases" that can be bottled and provided to consumers under the "principle of similars" or the "principle of dilutions," including ailments such as stress or anxiety. There is no method for Defendant to cure stress or anxiety through homeopathic principles.  Accordingly, the homeopathic principles do not apply to the specific products manufactured, marketed and sold by Defendant.

20.     Homeopathic remedies are not marketed and sold in the United States in the same manner as when they first originated, approximately 200 years ago. When homeopathic drugs first originated, people would typically consult with a licensed homeopathic practitioner, who would compound his or her own

---

[2] *See* http://nccam.nih.gov/sites/nccam.nih.gov/files/homeopathy.pdf (last visited on July 6, 2012).

[3] *See* http://nccam.nih.gov/sites/nccam.nih.gov/files/homeopathy.pdf (last visited on November 27, 2012).

[4] *See* http://www.healthguidance.org/entry/12178/1/An-Introduction-to-Homeopathic-Remedies.html (last visited on November 27, 2012).

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

homeopathic remedy, or provide a prescription to the patient.   Food and Drug Administration Compliance Policy Guide ("CPG") § 400.400.

21.     Historically, homeopathic drugs were not labeled and were not directly advertised to consumers.   *Id.*   Instead, homeopathic remedies were primarily marketed to licensed homeopathic practitioners.   *Id.*

22.     There was good reason for this historical practice:  Homeopathic drugs are intended to be "'individualized' or tailored to each person—it is not uncommon for different people with the same condition to receive different treatments."  nccam.nih.gov/sites/nccam.nih.gov/files/ homeopathy.pdf.

23.     Now, however, a one-size-fits-all, combination of homeopathic remedies are marketed directly to consumers in the over-the-counter ("OTC") aisles of major retail stores.  CPG § 400.400.

24.     "Today the homeopathic drug market has grown to become a multimillion dollar industry in the United States, with a significant increase shown in the importation and domestic marketing of homeopathic drug products."  *Id.*

25.     Health care costs in the United States reached almost $2.6 trillion in 2010, with 10% of that amount spent on retail and prescription drugs. www.kaiseredu.org/issue-modules/us-health-care-costs/background-brief.aspx.   But, unless drug manufacturers disclose the complete truth to consumers, consumers are unable to make informed decisions about where to spend their limited healthcare dollars.  *See id.*

26.     Consumers who purchase homeopathic drugs in the OTC aisles of retail stores, including those who purchase Defendant's Products, are unaware of homeopathic dilution principles, and are merely seeking a natural alternative to prescription or other OTC non-homeopathic (i.e., allopathic) drugs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27.    Accordingly, the homeopathic drug industry, including Defendant, strives to market its Products as natural, safe, and effective alternatives to prescription and non-homeopathic OTC drugs.  But the latter category of drugs, which are all allopathic, have undergone rigorous scrutiny by the FDA and its appointed scientific committees.

28.    In contrast, homeopathic drugs, including Defendant's Products, undergo no FDA approval of efficacy or labeling claims, a material fact that is not communicated to the Products' purchasers.  *See* labels.fda.gov/.

29.    The FDA, itself, has publicly stated that it is aware of no scientific evidence that homeopathy is effective, another material fact that is not communicated to purchasers of Defendant's Products.  *See id.*

30.    Homeopathic drugs must comply with the minimal requirements set forth in the CPG.  But, the FDA has cautioned that compliance with the CPG, "the HPUS, USP, or NF does not establish that [a homeopathic drug] has been shown by appropriate means to be safe, effective, and not misbranded for its intended use."  CPG § 400.400.

31.    On August 26, 2011, the non-profit group, Center for Public Inquiry, petitioned the FDA to require homeopathic drug manufacturers to undergo the same efficacy requirements as other OTC products, and to label their drugs with a disclaimer that states: "The FDA has not determined that this product is safe, effective, and not misbranded for its intended use."  *See Gallucci v. Boiron, Inc.*, Case No. 3:11-CV-2039 JAH (S.D. Cal.), Dkt. No. 93-1 at p. 18.

32.    As a result of other class action litigation, such as the *Gallucci* case, *supra*, other homeopathic drug manufacturers have voluntarily agreed to implement a FDA disclaimer similar to the one noted above, along with additional injunctive relief, such as a dilution disclaimer and explanation of homeopathic

7

dilution for consumers. *See*, *e.g.*, *Gallucci*, Dkt. No. 105 at pp. 13-15; Dkt. No. 125 at pp. 9-10. Thus, even those in the industry recognize the average consumer's need for more truthfully label homeopathic drugs. *See id.* Defendant, however, has refused to modify its Products' labeling in a manner which would avoid consumer deception.

## FACTS

33.     Defendant advertises, distributes and sells three main categories of Rescue Products: Original Rescue Remedy, Rescue On The Go, and Rescue for a Good Night's Sleep.

34.     Rescue Remedy Products are sold at a premium, as they are labeled as being "Natural." For example, Defendant claims that "[y]ou won't find anything but all natural ingredients in Rescue Remedy," and "Sleep naturally," among other similar "natural" representations about most of their Rescue Remedy products. Ex. 2 at pp. 12-13.

35.     These "natural" claims are false and/or deceptive, however, because many of the Products contain artificial, synthetic, chemically processed or chemically reduced ingredients, including, but not limited to: phenoxyethanol, caprylyl glycol, glyceryl caprylate, Peg 20- and Peg-100 Stearate (synthetic polymers) (found in Rescue Cream); and citric acid, sorbitol, maltitol, xylitol, (artificial sugar alcohols) (one or more found in Rescue Pastilles, Rescue Sleep Melts).

36.     Defendant also markets and sells its Products with express and implied establishment claims, representing they are "proven" to provide health benefits, perform as represented, and be effective. For example, Defendant claims that Rescue Remedy is "proven to be as helpful with animals as it is with people," for purposes of selling Rescue Remedy products. Ex. 2 at p. 11. A reasonable consumer would interpret this claim to mean that Defendant had competent,

8

reliable scientific evidence that Rescue Remedy provides health benefits, is proven effective, and performs as represented.

37.    Defendant's establishment claims are, however, false and deceptive because there is no competent reliable scientific evidence, such as human studies, to prove the effectiveness of the proprietary combination of flower essences in the Rescue Remedy Products.

38.    Further, Defendant's establishment claims are misleading because Defendant does not explain whether the scientific evidence that "prove[s]" Rescue Remedy's efficacy consists only of studies by scientists who accept homeopathic principles, studies with persons familiar with homeopathic principles, or studies similar to those required for other OTC non-homeopathic products (i.e., peer-reviewed, double-blind, randomized human clinical trials).

39.    Defendant also pushes sales of its Products through endorsement claims, representing the Products are "trusted around the world," "trusted for over 70 years," in close proximity to the name, "Dr. Bach," who created the Rescue Remedy formula 70 years ago.  *See, e.g.,* Ex. 2 at p. 12.  But these endorsement claims are false or deceptive, among other reasons, because Defendant does not explain to consumers what types of persons trust or have trusted the Products for over 70 years; if those persons are consumers and whether those consumers were educated in homeopathy or not; or whether the claim refers to physicians, and, if so, whether it refers to those practicing homeopathic medicine or doctors practicing allopathic medicine.

40.    The Federal Trade Commission ("FTC") enforces OTC drug advertising and applies the same "reasonable consumer" standard as any consumer product.  The FTC requires OTC drug advertising to be truthful, non-deceptive, fair, and for manufacturers to contain evidence that backs up their claims.

41.     At all times relevant herein, Defendant had a duty to disclose additional, complete and truthful information to consumers purchasing the Products, to correct the misunderstandings its material omissions and misrepresentations created in the minds of those consumers.

## THE ORIGINAL RESCUE REMEDY

42.     The same basic combination of active ingredients that constitutes Defendant's Original Rescue Remedy is present in all of the Products: *Helianthemum Nummularium* (5X HPUS), *Clematis Vitalba* (5X HPUS), *Impatiens Glandulifera* (5X HPUS), *Prunus Cerasifera* (5X HPUS) and *Ornithogalum Umbellatum* (5X HPUS). *See* Exs. 1 & 4 (ingredients chart).

43.     Defendant advertises their Original Rescue Remedies as "the natural alternative to manage everyday stress," and as effective "to help restore inner calm and control" when dealing with stressful situations. *Id.*

A. Original Rescue Remedy Drops

44.     Defendant advertises that Original Rescue Remedy Drops "is one of the world's best known natural stress relief remedies," "an all-natural form of healing" and "effective in virtually any situation that causes stress or anxiety." It purports to "restore a sense of calm and control." *See* Ex. 1 (product photos), Ex. 2 (product leaflet).

45.     In or around 2011, and during the class period defined herein, Plaintiff Ruszecki purchased Defendant's Original Rescue Remedy Drops 20ml and Rescue Sleep Melts from a Walgreens or CVS in Valley Village, California. Plaintiff Ruszecki is a consumer as described herein. Ms. Ruszecki's Rescue Remedy purchase totaled approximately $30.00.

46.     In purchasing Defendant's Rescue Remedy Drops, Plaintiff Ruszecki reasonably relied upon various representations Defendant made on the Products' labels, taken together and in context, such as: "100% Natural;" an "All Natural

10

Form of Healing that Can Reduce Everyday Stress;" "World's Best Known Natural Stress Relief;" "Fast Acting;" "Effective in virtually any situation that causes stress or anxiety;" "Helps restore a sense of calm and control;" "Gentle, safe, effective treatment for the whole family;" "trusted around the world" and "trusted for over 70 years" in close proximity to the name, "Dr. Bach," "Non-Habit Forming," among other representations.  *See also* Exs. 1-3.  But for these advertising claims, Plaintiff would not have purchased Defendant's Original Rescue Remedy Drops 20ml and Rescue Sleep Melts products ("Products").

47.     Defendant's Products did not work for Plaintiff Ruszecki as advertised.

48.     When consumers like Plaintiff Ruszecki purchase a homoeopathic item like Rescue Remedy, they do not even realize they are purchasing a homeopathic product.[5]  Thus, Plaintiff, in the exercise of reasonable diligence, could not have discovered Defendant's deceptive practices earlier.

49.     In purchasing Original Rescue Remedy Drops, class members were exposed to the representations Defendant makes on the Products' packaging label, such as the name itself; "100% Natural;" "All Natural Form of Healing that Can Reduce Everyday Stress;" "World's Best Known Natural Stress Relief;" "Fast Acting;" "Effective in virtually any situation that causes stress or anxiety;" "Helps restore a sense of calm and control;" "Gentle, safe, effective treatment for the whole family;" "trusted around the world" and "trusted for over 70 years" in close proximity to the name "Dr. Bach," "Non-Habit Forming," among other representations.  *See* Ex. 1.  Consumers also are exposed to Defendant's Rescue Remedy product pamphlets that are distributed by Defendant in retail store displays.  *See* Ex. 2.

---

[5] Monks, Richard, '*Very much a growth category,*' Chain Drug Review, October 1, 2007, *available at* 2007 WLNR 27076043.

11

1    50.    Defendant's representations and omissions, as described herein, were
2  material to average consumers and members of the class, and the class
3  presumptively relied on the Products' claims because they purchased the Products
4  after reading the Products' labels.
5    51.    Original Rescue Remedy Drops is sold in a 10ml and 20ml formula
6  and the price is approximately $11.99 for the 10ml formula and $19.95 for the
7  20ml formula.  Hence, Defendant's unfair and deceptive practices have enriched
8  them by hundreds of thousands of dollars, at the expense of thousands of
9  Americans.
10    52.    Absent the misstatements and omissions described herein, Plaintiff
11  and consumers would not have purchased Original Rescue Remedy Drops at the
12  prices they did.
13    53.    Because Plaintiff and the class expected the statements to be true and
14  honest when they are in fact false or misleading, they did not receive the benefit of
15  their purchases.
16          B.  Rescue Remedy Spray and Rescue Cream
17    54.    Rescue Remedy Spray has the same purportedly active ingredients as
18  Original Rescue Remedy Drops.  *See* Ex. 1.
19    55.    Rescue Cream has the same purportedly active ingredients of Original
20  Rescue Remedy Drops and Rescue Remedy Spray, with the addition of *Malus*
21  *Pumila* (5X HUPS).  Exs. 1 & 4.  The inactive ingredients in Rescue Cream
22  include Phenoxyethanol, whose chemical name is 2-phenoaxyethanol ethylene
23  glycol phenyl.  Phenoxyethanol can be found naturally in green tea.  However, this
24  cosmetic ingredient is not plant derived.  Rather, it is synthetically produced and
25  has carcinogenic and toxic compounds.  As such, it is **not** a natural ingredient,
26  even though Defendant's advertise Rescue Cream as "Natural."
27
28

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

56.   Defendant knows or should know that there are non-natural ingredients in Rescue Cream.

57.   In purchasing Rescue Remedy Cream, members of the class were exposed to, and purchased the Product as a result of various representations Defendant made on the Product's label, taken together and in context, such as the Product's name itself; "Natural skincare for hands, body & face;" "Helps promote the healing of irritated or damaged skin;" "Effectively repairs and helps protect the skin against environmental influences and other stress factors;" "Offers both cleansing and emotional support of appearance;" "Helps soothe & heal the skin;" among other representations. *See also* Exs. 1-3.

58.   In purchasing Rescue Remedy Spray, members of the class were exposed to, and purchased the Product as a result of various representations Defendant makes on the Product's packaging, taken together and in context, such as the Product's name itself, "the natural alternative to manage everyday stress," a "natural stress relief," "100% natural," "fast acting spray," "just two sprays to manage your everyday stress," "a trusted brand for over 70 years in 66 countries," "safe for the whole family" and "free from artificial additives," among other representations. *See* Ex. 1. In fact, the Product is not inherently effective beyond a placebo effect, if any; and on information and belief is not "100% natural" because of use of synthetic or chemically derived ingredients.

59.   Absent the misstatements and omissions described herein, consumers would not have purchased Rescue Remedy Spray or Rescue Cream at all, much less at the prices they did.

60.   Because the class expected the statements to be true and honest when they are, in fact, false or misleading, they did not receive the benefit of their purchases of Rescue Remedy Spray or Rescue Cream.

61.   The price of Rescue Cream is approximately $10.95.

62.    Rescue Remedy Spray is sold in a 7ml and 20ml formula and the price is approximately $12.95 for the 7ml formula and $19.95 for the 20ml formula.

63.    Defendant's unfair and deceptive practices of Rescue Cream and Rescue Remedy Spray have enriched them by hundreds of thousands of dollars, at the expense of thousands of Americans.

64.    Hence, Defendant's unfair and deceptive practices have enriched them by hundreds of thousands of dollars, at the expense of thousands of Americans.

C.    Rescue Gum

65.    Rescue Gum has the same purportedly active ingredients as Original Rescue Remedy Drops.  *See* Ex. 1.

66.    Rescue Gum is advertised as being for "Natural Stress Relief," and inherently effective for "stress relief," plus "courage and presence of mind," "focus when ungrounded," "patience with problems and people," "balanced mind when losing control," and "softens impact of shock." *Id.*

67.    But Rescue Gum is not inherently effective for its advertised uses.

68.    Moreover, the inactive ingredients in Rescue Gum include isomalt, sorbitol, maltitol, mannitol, glycerin, xylitol, titanium dioxide, soya lecithin, carboxymethylcellulose, citric acid, and malic acid.  These ingredients are not, however, natural.  Rather, they are chemically or synthetically produced, some are artificial sugar substitutes, and some are even toxic.  As such, Rescue Gum is **not** a natural product, even though Defendant's advertise it as being "Natural."

69.    Defendant knows or should know that there are non-natural ingredients in Rescue Gum.

70.    In purchasing Rescue Gum, members of the class were exposed to, and purchased the Product as a result of the representations Defendant made on the Product's label, taken together and in context, as listed above. *See also* Exs. 1-3.

71.    In fact, the Product is not inherently effective for the various advertised forms of stress relief beyond a placebo effect, if any; and is not "natural" because of use of artificial, synthetic or chemically derived ingredients.

72.    Absent the misstatements and omissions described herein, consumers would not have purchased Rescue Gum at all, much less at the prices they did.

73.    Because the class expected the statements to be true and honest when they are, in fact, false or misleading, they did not receive the benefit of their purchases of Rescue Gum.

74.    The price of Rescue Gum is approximately $6.50 - $7.00 per box (17 pieces of gum).

75.    Defendant's unfair and deceptive practices involved in their marketing and sale of Rescue Gum have accordingly enriched them by hundreds of thousands of dollars, at the expense of thousands of Americans.

D.    Rescue Kids

76.    Rescue Kids has the same purportedly active ingredients as Original Rescue Remedy Drops. *See* Ex. 1.

77.    Rescue Kids is advertised as being a "Natural Stress Relief for Kids," with the "i" in Kids being topped by a parent-attracting red handprint; and as being inherently effective for "stress relief," plus "courage and presence of mind," "focus when ungrounded," "patience with problems and people," "balanced mind when losing control," and "softens impact of shock." *Id.*

78.    But Rescue Kids is not inherently effective for its advertised uses.

79.    Moreover, the inactive ingredients in Rescue Kids include "80% glycerine" and "20% water." Thus, there is little to no presence of any active ingredients in Rescue Kids.

80.    Further, on information and belief, the pharmaceutical grade glycerine is used in Rescue Kids, with is chemically or synthetically produced, and derives

15

from petroleum, such that Rescue Kids is **not** a natural stress relief product, even though Defendant's advertise it as being "Natural." Further, "80% glycerine" is an unhealthy amount of glycerine for a child to ingest as oral ingestion of this ingredient can cause health problems. This further demonstrates that the "natural" advertising, meant to induce parents into thinking Rescue Kids is safe for their child, is not as advertised.

81. Defendant knows or should know that there are non-natural ingredients in Rescue Kids.

82. In purchasing Rescue Kids, members of the class were exposed to, and purchased the Product as a result of the representations Defendant made on the Product's label, taken together and in context, as listed above. *See also* Exs. 1-3.

83. In fact, the Product is not inherently effective for the various advertised forms of stress relief beyond a placebo effect, if any; and is not "natural" because of use of artificial, synthetic or chemically derived ingredients.

84. Absent the misstatements and omissions described herein, consumers would not have purchased Rescue Kids at all, much less at the prices they did.

85. Because the class expected the statements to be true and honest when they are, in fact, false or misleading, they did not receive the benefit of their purchases of Rescue Kids.

86. The price of Rescue Kids is approximately $12 - $13 per box.

87. Defendant's unfair and deceptive practices involved in their marketing and sale of Rescue Kids have accordingly enriched them by hundreds of thousands of dollars, at the expense of thousands of Americans.

## **RESCUE ON THE GO**

88. Defendant manufactures, advertises, distributes and sells a variety of Rescue On The Go products, including Rescue Pastilles.

89.     Defendant advertises its Rescue On The Go products as "natural stress relief."  Ex. 1.

90.     Defendant advertises that Rescue Pastilles is equivalent to 1 dose of Rescue Remedy, is a "natural stress relief" and "a trusted brand for over 70 years in 66 countries."  Ex. 1.

91.     In purchasing Rescue Pastilles, members of the class were exposed to Defendant's claims on the Product's packaging and literature distributed with the Product, taken together and in context, including the Product's name, that it is effective for "Natural Stress Relief," "relief of occasional stress," and "A trusted brand for over 70 years in 66 countries;" and thereafter purchased the Products in reliance on those claims.  *See* Exs. 1-3.  In fact, the Product is not inherently effective for its advertised used beyond a placebo effect, if any.

92.     In tiny letters on the back/bottom of the Rescue Pastilles packaging, Defendant lists the inactive ingredients in Rescue Pastilles, which includes xylitol, sorbitol, maltitol, isomalt, and citric acid.  Exs. 1 & 4.

93.     Citric acid is artificial and man-made as it is produced from certain strains of the mold Aspergillus niger.  Even though citric acid is not natural, Defendant deceptively and/or falsely advertises Rescue Pastilles as providing "Natural Stress Relief."[6]

94.     Further, xylitol, sorbitol, maltitol and isomalt are artificial sugar substitutes and are not natural sugars.  Despite this fact, Defendant advertises Rescue Pastilles as providing "Natural Stress Relief," which is false and/or deceptive.

---

[6] Even the FDA considers most modern forms of citric acids used in foods and pharmaceutical products to be non-natural.

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

95.     Defendant knows or should know there are non-natural ingredients in Rescue Pastilles whereby advertising the Product as "Natural Stress Relief" and other "natural" claims are false and/or deceptive.

96.     Because the class expected Defendant's labeling and marketing statements to be true and honest when they are in fact false or misleading, they did not receive the benefit of their purchases of Rescue Pastilles.

97.     Rescue Pastilles is sold in the flavors Cranberry, Elderflower & Orange, and Black Currant and the price is approximately $7.95 per 50-pellet package.  The flavorings are incidental only, in that all of the Rescue Pastilles products, as with Original Rescue Remedy, have the same ineffective active ingredients and the same "natural" advertising.

98.     Absent the misstatements and omissions described herein, the consumer class members would not have purchased Rescue Pastilles at all, much less at the prices they did.

99.     Defendant's unfair and deceptive practices have enriched them by hundreds of thousands of dollars, at the expense of thousands of Americans.

## RESCUE SLEEP

100.   Defendant advertises, distributes and sells a variety of Rescue Sleep products, including Rescue Sleep Spray and Rescue Sleep Melts.

101.   Defendant advertises their Rescue Sleep products "provide[] natural relief of occasional sleeplessness caused by stress and repetitive thoughts." *See* Exs. 1-3.

102.   Defendant advertises that Rescue Sleep Liquid Melts melt on your tongue to release four drops of Rescue Sleep and purport to provide "natural relief of occasional sleeplessness caused by stress and repetitive thoughts."  Ex. 1.

103.   In or around 2011, and during the class period defined herein, Plaintiff Ruszecki purchased Defendant's Rescue Sleep Melts from a Walgreens or CVS in

18

Valley Village, California.  Plaintiff Ruszecki is a consumer as described herein. Ms. Ruszecki's total Rescue Remedy purchase totaled approximately $30.00.

104.   In purchasing Rescue Sleep Melts, Plaintiff Ruszecki and the class reasonably relied upon various representations Defendant made on the Products' labels, taken together and in context, such as that the product was inherently effective as a  "Natural Sleep Aid in a Capsule," "all natural, non-narcotic and habit forming," "Provides natural relief of occasional sleeplessness caused by stress and repetitive thoughts," and the package's blue background with yellow stars and yellow moon, which altogether convey the message that Rescue Sleep Melts are an inherently effective, natural sleep aid.  *See* Ex. 1.

105.   In tiny letters on the back of the Rescue Liquid Sleep Melts packaging, Defendant lists the inactive ingredients in the Product, which includes "(bulking agent) sorbitol."  Exs. 1 & 4.  Sorbitol is an artificial sugar substitute and is not a natural sugar.  Despite this fact, Defendant advertises Rescue Sleep Melts as providing "Natural Sleep Aid," which is false and/or deceptive.

106.   Defendant knows or should know there are non-natural ingredients in Rescue Pastilles.

107.   Rescue Sleep Melts did not work for Plaintiff as advertised.  In fact, the Product is not inherently effective beyond a placebo effect, if any; and is not "natural" for the reasons discussed herein.

108.   Because Plaintiff and the class expected Defendant's labeling and marketing statements to be true and honest when they are in fact false or misleading, they did not receive the benefit of their purchases.

109.   The price of Rescue Sleep Melts is approximately $9.95 per box of 28 capsules.

110.   Absent the misstatements and omissions described herein, Plaintiff Ruszecki and similarly situated consumers would not have purchased Rescue Sleep Melts at all, much less at the prices they did.

111.   Defendant's unfair and deceptive practices have enriched them by hundreds of thousands of dollars, at the expense of thousands of Americans.

## SPECIFIC MISREPRESENTATIONS,
## MATERIAL OMISSIONS, AND DECEPTIVE ACTS
### (As to All Products and All Causes of Action Against Defendant)

112.   Pursuant to section California Civil Code § 1782, Plaintiff notified Defendant, in writing, by certified mail, of particular violations of Civil Code § 1770 as to the Products, and demanded Defendant rectify the problems associated with its labeling as detailed herein, and asked Defendant to give notice to all affected consumers of its intent to so act.  *See* **Exhibit 3** attached hereto. Defendant's wrongful business practices regarding the Products constituted, and constitute, a continuing course of conduct because Defendant is still representing the Products have characteristics, uses, benefits, and abilities that are false and misleading.

113.   According to the Institute of Medicine, "sleep is necessary for the nervous system to work properly," and lack of sleep "can hamper the immune system," causing devastating problems for consumers and the public. *See Chain Drug Review* articles, attached hereto as **Exhibit 4**.  These health problems drive up America's already exploding health care costs, by causing other illnesses when people are unable to achieve sleep normally.  *See Id*.  As many as 30 million Americans suffer from sleep disorders.  *Id.*

114.   Consumers have increasingly sought out natural sleep aids in recent years to deal with stress and related inability to sleep.  *See Id*.  In addition, consumers have turned to purported "natural" sleep aids because of highly

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

1   publicized problems with prescription sleep aids and the side effects with

2   allopathic OTC sleep aids.  *See id.* Defendant has taken advantage of this situation

3   and pushed to promote its Products, falsely, as effective and "natural" alternatives

4   to allopathic OTC sleep aids and prescription sleep medicines.  *See id.*

5       115.   Defendant's advertising of its Products is and has been the subject of

6   an extensive and comprehensive nationwide marketing campaign in various media,

7   including the internet.

8       116.   Defendant primarily advertises and promotes its Products through

9   labeling claims on the front of the Products' packaging.  Label descriptions and

10  images on the Products' packaging, taken as a whole, clearly indicate what the

11  Products are supposed to do.  *See* Ex. 1.

12      117.   Plaintiff and members of the Class relied on the Products' names and

13  label statements in purchasing Defendant's Products.

14      118.   Defendant distributes, advertises and sells their homeopathic Products

15  as containing "active" ingredients and markets the Products as effective in

16  relieving various symptoms.  Defendant's Products, however, are essentially

17  placebos.  Even if Defendant's Products contain the purportedly active ingredients

18  listed on Defendant's Products' labels, those ingredients are ineffective and/or so

19  greatly diluted as to be non-existent in the Products, such that the Products are

20  ineffective for their intended uses. *See* Exs. 1-4.

21      119.   Defendant represents its Products are homeopathic.  Yet Defendant

22  does not explain to consumers the nature of homeopathic medicine or the method

23  of measurement used for its Products. For example, Defendant fails to state what

24  the dilution levels of X, C, K and similar dilution levels mean, in a language

25  understandable to an average consumer.

26      120.   Further, Defendant places the word "homeopathic" in the bottom edge

27  or corner of most of the Products' packaging, and outside the Principal Display

28

21

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

Panel, such that an average consumer would not notice the Products are homeopathic.  *See* 21 C.F.R. § 201.15.

121.   Defendant's labeling and advertising claims are false and deceptive because Defendant's Products are composed of nothing more than alcohol, natural flavoring, and sugar substitutes onto which minute quantities of water have been absorbed.  The Products thus contain no active ingredients, and have no effect on ailments and symptoms they are advertised for and did not alleviate the symptoms for which Plaintiff purchased them.

122.   Defendant's labeling and advertising claims are further false and deceptive because Defendant is free to indicate Product uses without any regulatory oversight, a fact that is not disclosed to consumers.  Consumer confusion on this issue is compounded because Defendant strives to sell its Products in OTC aisles with other non-homoeopathic OTC products, which are subject to other regulations (i.e. FDA regulations) and carry approved FDA monographs.   *See* **Exhibit 4** (Chain Drug Review articles, which demonstrate Defendant's knowledge that consumers do not know what they are buying when they purchase a homeopathic product or how homeopathic products purportedly work, how Defendant sought to capitalize on consumer confusion by marketing its Products as "Natural," and how Defendant downplayed that its Products are homeopathic).

123.   Defendant also represents its Products are "Natural," "100% Natural," among other "natural" representations.  Exs. 1 & 2.  However, Defendant's Rescue Cream contains phenoxyethanol, Rescue Pastilles contains citric acid and sugar substitutes, Rescue Liquid Sleep Melts contain sorbitol, all of which are **not** natural ingredients.  As such, Defendant's product labeling and marketing is false. *See also* 21 C.F.R. § 201.10(c).  Even if the foregoing were not true, the

prominence to Defendant's "Natural" claims is such as to render the labeling and marketing deceptive to the average consumer.  *See id.*

124.   Terms such as "Natural" are used by Defendant to induce consumers, such as the Plaintiff and member of the putative Class, into believing the Product being described contains only naturally occurring ingredients, and not chemically altered or man-made ingredients; or the ingredients are not altered using a patented enzymatic process, and therefore, the Product as a whole is natural and healthy.

125.   By using this "Natural" branding strategy, Defendant is stating its Products are superior to and/or better than competing products that do not proclaim to be "Natural".

126.   Defendant also uses its website, www.nelsonnaturalworld.com to advertise and promote its "Natural" homeopathic Products.

127.   As a direct result of Defendant's misleading, deceptive and untrue advertising, in addition to its unlawful, unfair and fraudulent business practice of defining its Products as "Natural", Defendant caused Plaintiff and other members of the Class to purchase, purchase more of, or pay more for, these "Natural" Products.

128.   Moreover, "[m]ental disorders impose a multi-billion dollar burden on the economy each year . . . ."  Br. J. Psychiatry Suppl. 1998, 34:4-9 (Institute for Health & Aging, U.C. San. Fran.).  "Anxiety disorders are the most costly, amounting to $46.6 billion, or 31.5% of the total."  *Id.*  By taking advantage of anxious consumers' vulnerability—due to their already impacted mental states, coupled with the high cost the public already pays to treat anxiety illnesses and symptoms as a society, Defendant's false and deceptive labeling and marketing is not only fraudulent but oppressive, which justifies an award of punitive damages.

129.   Defendant's conduct is further malicious, oppressive and fraudulent in that Defendant has admitted it knows the public is unaware of the nature of its

1    homeopathic Products.   Defendant also seeks to capitalize on how consumers
2    perceive homeopathic drugs as "natural," when they are not completely natural.
3    Defendant also encourages retailers to position its Products next to other, allopathic
4    OTC products on store shelves, the latter of which are subject to far more stringent
5    FDA oversight and labeling review and adds to consumer confusion as to the true
6    nature of Defendant's Products.  *See* Ex. 4.  For example, Curt Finkler, Defendant's
7    senior brand manager, stated that "Previously there was a line between the mass
8    market consumer and the natural products consumer, . . . That line has become
9    fuzzier in recent years . . . ."  Ex. 4.  "The key to making homeopathy and natural
10   remedies work [in terms of sales], those in the industry say, is to play up the
11   products' all-natural formulas while reducing the emphasis on homeopathy . . . ."
12   Ex. 4.  Finkler also admits "There has always been a school of thought that the
13   homeopathic consumer differs from the mass consumer."   Ex. 4.  Despite this
14   knowledge of consumer confusion in the mass market channels, Defendant strove to
15   convince retailers to display its homeopathic Products next to allopathic, FDA-
16   approved drugs with approved monographs, which created and fueled consumer
17   confusion and increased Defendant's Product sales.  Defendant's business conduct
18   in this regard was deceptive, fraudulent, and oppressive, which justifies an award of
19   punitive damages.

20        130.   Further, Defendant's marketing and promotion of its Products was
21   supported by false and misleading claims containing material omissions and
22   misrepresentations.

23        131.   When purchasing the Products, Plaintiff and the class were seeking
24   remedies that would provide the benefits and had the endorsements, proof of
25   efficacy, and characteristics that Defendant marketed, promised, represented and
26   warranted.

27
28

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

1
2
3
4

132.   Plaintiff and the class purchased the Products believing the Products had the qualities they sought, based on the Products' deceptive or false labeling. Yet, the Products were actually unacceptable to Plaintiffs, as the Products did not possess the advertised benefits, endorsements, proof, and characteristics.

5
6
7
8
9
10
11
12

133.   Moreover, like all reasonable consumers and members of the class, Plaintiff considers a product's label compliance with federal law a material factor in their purchasing decisions.   Plaintiff is generally aware the federal government carefully regulates OTC products and therefore have come to trust that information conveyed on packaged OTC product labels is truthful, accurate, complete, and fully in accordance and compliance with federal law.   As a result, Plaintiff trusts she can compare competing products on the basis of their labeling claims, to make a purchasing decision.

13
14
15
16
17

134.   Like all reasonable consumers and members of the class, Plaintiff would not purchase an OTC product they knew was misbranded under federal law, *see* 21 U.S.C. § 352, which the federal government prohibits selling, *id.* § 331, and which carries with its sale criminal penalties, *id.* § 333.   Plaintiff could not trust a product label misbranded under federal law is truthful, accurate and complete.

18
19
20

135.   Similarly, like all reasonable consumers and members of the class, Plaintiff would not purchase an OTC product they knew was an illegally marketed new drug for which the FDA has not determined its safety and efficacy.

21
22
23

136.   In light of the foregoing, reasonable consumers, including Plaintiff and other members of the class, were and are likely to be deceived by Defendant's advertising and marketing practices as detailed herein.

24
25
26

137.   Further, Plaintiff and other members of the class purchased the Products instead of competing products based on the false statements, misrepresentations and omissions described herein.

27
28

138.   Instead of receiving a product that has the benefits, advantages, endorsements, proof, and characteristics as advertised, Plaintiff and other members of the class received a product worth much less, or which was worthless, since the Products do not work; cause no effect or effectuate a reversal of symptoms; and do not possess the characteristics, benefits, endorsements, and proof of efficacy, as advertised by Defendant.

139.   Plaintiff lost money as a result of Defendant's deception in that Plaintiff did not receive what she had paid for.

140.   Plaintiff altered her position to their detriment and suffered damages in an amount equal to the amount they paid for the Products over the class period.

141.   Plaintiff also seeks justice for herself and similarly-situated consumers of the Products, by means of this action to obtain retrospective injunctive relief regarding the ongoing deceptive practices described herein, namely, restitution.

## CLASS ACTION ALLEGATIONS

142.   Pursuant to Rules 23(a), (b)(3) and/or (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action for retrospective injunctive relief (restitution) and damages on behalf of the following class:

> All persons located within California, and states with consumer protection laws that do not materially differ from California's consumer protection statutes, who purchased a Rescue Remedy product manufactured, distributed, or sold by Nelson Bach USA, Ltd., specifically:  Original Rescue Remedy Drops, Rescue Remedy Spray, Rescue Cream, Rescue Pastilles, Rescue Gum, Rescue Sleep Melts and Rescue Kids, and all iterations/variations of the aforementioned products, for personal or household use and not for resale, from February 28, 2008 to the present (the "Class Period"). Excluded from the nationwide consumer class are governmental

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

entities, the Defendant, any entity in which the Defendant has a controlling interest, its employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

143.   The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the tens of thousands, and members of the Class are numerous and geographically dispersed across the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

144.   Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages as to their Products appropriate with respect to the Class as a whole.  In particular, Defendant failed to disclose the true nature of the Products being marketed and that the Products are nothing more than placebos.

145.   There is a well-defined community of interest in the questions of law and fact involved that affected Plaintiff and the Class, which include, but are not limited to:

        a.   Whether the claims discussed above are true, misleading, or reasonably likely to deceive;

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

b.      Whether Defendant's alleged conduct violates public policy;

c.      Whether the alleged conduct constitutes violations of the laws asserted herein;

d.      Whether Defendant engaged in false or misleading advertising;

e.      Whether the Plaintiff and Class members have sustained monetary loss and the proper measure of that loss for purposes of either restitution or damages; and

f.      Whether the Plaintiff and Class members are entitled to declaratory and retrospective injunctive relief.

146.   Plaintiff's claims are typical of the Class members' claims.  Plaintiff and all Class members have been similarly affected by the Defendant's common course of conduct because they all relied on Defendant's representations concerning its homeopathic Products and purchased the Products based on those representations.

147.   Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in handling complex class action litigation in general and scientific claims, including homeopathic drugs, in particular.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

148.   Plaintiff and the Class members suffered and will continue to suffer harm as a result of the Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all Class members is impracticable. Even if individual Class members had the resources to pursue individual litigation,

1  it would be unduly burdensome to the courts in which the individual litigation
2  would proceed.  Individual litigation magnifies the delay and expense to all parties
3  in the court system of resolving the controversies engendered by Defendant's
4  course of conduct.  The class action device allows a single court to provide the
5  benefits of unitary adjudication, including claims from states with law substantially
6  similar to California, will preserve judicial economy, and the fair and efficient
7  handling of all Class members' claims in a single forum.  The conduct of this
8  action as a class action conserves the resources of the parties and of the judicial
9  system and protects the rights of the class members.  Furthermore, for many, if not
10 most, a class action is the only feasible mechanism that allows an opportunity for
11 legal redress and justice.

12       149.   Adjudication of individual Class members' claims with respect to the
13 Defendant would, as a practical matter, be dispositive of the interests of other
14 members not parties to the adjudication, and could substantially impair or impede
15 the ability of other class members to protect their interests.

16                        **FIRST CAUSE OF ACTION**
17       **VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES**
18                                    **ACT**
19                    ***California Civil Code §§ 1750, et seq.***
20          **(On Behalf of Plaintiff and the Class, as Against Defendant)**

21       150.   Plaintiff repeats, realleges and incorporates by reference each and
22 every allegation contained above as if fully set forth herein.

23       151.   This cause of action is brought pursuant to the Consumers Legal
24 Remedies Act, California Civil Code § 1750, *et seq*. (the "Act").  Plaintiff and the
25 members of the Class are consumers as defined by California Civil Code §
26 1761(d).  The Products are goods within the meaning of the Act.

27
28

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

152.   Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class that were intended to result in, and did result in, the sale of the Products:

- Representing [the Products have]…characteristics, ingredients, uses, benefits or quantities, which [the Products] do not have. (Civ. Code § 1770(a)(5).)

- Representing [the Products] are of a particular standard, quality or grade… if they are of another.  (Civ. Code § 1770(a)(7).)

- Advertising [the Products] …with intent not to sell them as advertised.  (Civ. Code § 1770(a)(9).)

- Representing [the Products] have been supplied in accordance with a previous representation when it has not.  (Civ. Code § 1770(a)(16).)

153.   Defendant violated the Act by making claims, misrepresentations and omissions in the labeling and advertising of the Products, as set forth more fully herein, when it knew, or should have known, the representations and advertisements were false or misleading.

154.   Plaintiff and Class members reasonably relied upon Defendant's representations as to the quality and attributes of the Products.

155.   Plaintiff and other Class members were deceived by Defendant's representations about the quality and attributes of the Products, taken as a whole. Plaintiff and other Class members would not have purchased the Products had they known Defendant's claims were untrue, deceptive, or had they known the true nature of the Products.

156.   Pursuant to section 1782 *et seq*. of the Act, Plaintiff notified Defendant, in writing, by certified mail, of the particular violations of § 1770 of the Act as to its Products and demanded Defendant rectify the problems associated with the above detailed actions and give notice to all affected consumers of its

intent to so act.  Defendant's wrongful business practices regarding the Products constituted, and constitute, a continuing course of conduct in violation of the California's Consumers Legal Remedies Act because Defendant is still representing the Products have characteristics, uses, benefits, and abilities that are false and misleading, and have injured Plaintiff and the Class.  Copies of Plaintiff's letter is attached as **Exhibit 3** hereto.

157.   Pursuant to California Civil Code § 1780(a), Plaintiff and the Class seek an order of this Court awarding Plaintiff and the Class restitution and disgorgement; awarding Plaintiff and the Class damages and punitive damages; order Defendant to pay the cost of Class notice; awarding Plaintiff and the Class attorney's fees and costs; and awarding Plaintiff any other relief just and proper.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

*California Business and Professions Code §§ 17200, et seq.*

**(On Behalf of Plaintiff and the Class, as Against Defendant)**

158.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

159.   California's Unfair Competition Law, Business and Professions Code § 17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Defendant engaged in unfair, deceptive, untrue and misleading advertising in violation of the UCL.

160.   The UCL also prohibits any "unlawful… business act or practice." Defendant violated the UCL's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and by violating among others, Cal. Civ. Code §§ 1572, 1573, 1709, 1710, 1711, 1770, Cal. Health & Safety Code §§ 109875, *et seq.* (the "Sherman Law"), Cal. Bus. & Prof. Code §§ 12601, *et seq.* ("Fair Packaging

and Labeling Act"), Cal. Comm. Code § 2313(1), Florida Stats. § 672.313 and the common law.  Such conduct is ongoing and continues to this date.  *See* Exs. 2-3.

161.   Plaintiff and the Class reserve the right to allege at trial other violations of law which constitute other unlawful business acts or practices.

162.   California Business and Professions Code § 17200 also prohibits any "unfair"… business act or practice."

163.   Defendant's acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as to the gravity of its conduct and outweighs any alleged benefits attributable to such conduct.  Such conduct is ongoing and continues to this date.

164.   Plaintiff alleges Defendant's conduct violated the consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers.  Plaintiff asserts Defendant's conduct also violated the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  Defendant's conduct also constitutes violations of the unfair prong of the UCL.  Such conduct is ongoing and continues to this date.

165.   Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein, such as to advertise the nature and qualities of the Products truthfully, or to refrain from labeling and marketing the Products as "natural" in order to take advantage of the premium American consumers currently place on natural products.

166.   The UCL also prohibits any "fraudulent business act or practice."

167.   Defendant's claims, nondisclosures (i.e., omissions), and misleading statements, as more fully set forth above, were false, misleading and/or likely to

deceive the consuming public within the meaning of the UCL.  Such conduct is ongoing and continues to this date.

168.   Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other members of the Class.  Plaintiff will continue to be exposed to Defendant's false and/or misleading advertising every time she shops for an anxiety remedy and see Defendant's false or deceptive advertising on store shelves.  Defendant's competitors will also continue to suffer from Defendant's unfair or deceptive business conduct if injunctive relief is not afforded.

169.   Plaintiff has suffered injury in fact as a result of Defendant's unfair conduct, in the form of the lost purchase price for the Products.

170.   Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of Defendant's Products, which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

#### *California Business and Professions Code §§ 17500, et seq.*

#### **(On Behalf of Plaintiff and the Class, as Against Defendant)**

171.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

172.   Plaintiff has standing to pursue this claim as Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Products in reliance upon Defendant's marketing claims and would not have purchased but for Defendant's marketing claims.  Plaintiff used the Products as directed, but the Products did not work as advertised and were not as advertised.  Nor did the Products provide any of the promised benefits.

173.   Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code §§ 17500, *et seq.* because Defendant advertised its Products in an untrue or misleading manner, or in a manner that Defendant knows to be untrue or misleading.

174.   Defendant's wrongful business practices have caused injury to Plaintiff and the Class.

175.   Pursuant to section 17535 of the California Business and Professions Code, Plaintiff and the Class seek an order of this court for the disgorgement and restitution of all monies from the sale of Defendant's Products, which were unjustly acquired through acts of unlawful, unfair, deceptive and/or fraudulent competition.

## FOURTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

### (On Behalf of Plaintiff and all Class Members, as Against Defendant)

176.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

177.   On the Products' labels and through its marketing campaign as described above, Defendant made affirmations of fact or promises, or description of goods, which formed "part of the basis of the bargain" at the time of purchase. Specifically, Defendant warranted that:

- Original Rescue Remedy Drops provide "Natural Stress Relief," ""Dr. Bach's . . . Rescue Remedy® is one of the world's best known natural stress relief remedies," "Rescue Remedy® is an all natural form of healing that can reduce everyday stress and help maintain control of your health," "Effective in virtually any situation that causes stress or anxiety," "Helps restore a sense of calm and control," "Gentle, safe,

34

effective treatment for the whole family," "No artificial additives," and "For relief of occasional stress"

- Rescue Remedy Spray provides "Natural Stress Relief," is "100% Natural," a "Fast Acting Spray," "Trusted for over 70 years in 66 countries," "Safe for the whole family," "Just 2 sprays to manage your everyday stress," "Natural alternative to manage everyday stress," "Free from artificial additives," and grants consumers "courage and presence of mind," "focus when ungrounded," "patience with problems and people," "balanced mind when losing control," and "softens impact of shock"

- Rescue Cream contains "Vitamin[s]," and "Helps soothe & heal the skin," is "Natural skincare for hands, body & face," "Quickly absorbed," "Helps to promote the healing of irritated or damaged skin," "Effectively repairs and helps protect the skin against environmental influences and other stress factors," and "Offers both cleansing and emotional support of appearance"

- Rescue Pastilles provides "Natural Stress Relief," "A trusted brand for over 70 years in 66 countries," and is inherently effective "For relief of occasional stress"

- Rescue Sleep Melts are "Natural Sleep Aid In A Capsule," "All Natural," "provide[] natural relief of occasional sleeplessness caused by stress and repetitive thoughts," and are inherently effective for "Courage and presence of mind," "Focus when ungrounded," "Patience with problems and people," "Balanced mind when losing control," "Softens impact of shock," and "Relief from repetitive thoughts"

- Rescue Gum is "Natural Stress Relief," and inherently effective for "relief of occasional stress," "courage and presence of mind," "focus when ungrounded," "patience with problems and people," "balanced mind when losing control," and "softens impact of shock"
- Rescue Kids is advertised as being a "Natural Stress Relief for Kids," and as being inherently effective for "stress relief," plus "courage and presence of mind," "focus when ungrounded," "patience with problems and people," "balanced mind when losing control," and "softens impact of shock."

178.   Defendant's Product warranties were breached because the Products did not live up to their warranties as the Product is not "all-natural" and is not effective and includes additives.  Defendant's breach caused injury in the form of the lost purchase price consumers paid for the Products.  *See* Cal. Com. Code § 2313(1); Fla. Stat. § 672.313; *see also Zwart v. Hewlett-Packard Co.*, 2011 WL 3740805 (N.D. Cal., Aug. 23, 2011) (holding that online assertions can create warranties).

179.   As a result of Defendant's breach of warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Products they purchased.

## FIFTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (On Behalf of Plaintiff and the Class, as Against Defendant)

180.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

181.   Defendant, in its sale, marketing and promotion of its Products, and the acts and omissions as set forth herein, made representations to Plaintiff and the

36

members of the Class that its Products were merchantable for their advertised uses. *See supra*; *see also* Exs. 1 & 2.

182.   Plaintiff and the Class bought the Products manufactured, advertised and sold by Defendant.

183.   Defendant is a merchant with respect to the goods of this kind, which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other members of the Class, an implied warranty that those goods were merchantable.

184.   Defendant breached the warranty implied in the sale of goods, in that their Products do not provide the claimed benefits, as set forth in detail herein.

185.   As a result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that the Products did not conform to the promises and affirmations made on their container(s) or label(s).

186.   Plaintiff and the Class sustained damages as a proximate result of the foregoing breach of implied warranty, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. §§ 2301, *et. seq.* ("MMWA")
### (On Behalf of Plaintiff and the Class, as Against Defendant)

187.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

188.   Plaintiff brings this claim individually and on behalf of the members of the Class.

189.   Plaintiff and the Class allege violation of the MMWA based on breach of implied warranties under state law, as discussed in the Sixth Cause of Action. *See also* 15 U.S.C. §§ 2301(7), 2310(d)(1).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

190.   Further, Defendant's Products are consumer products as defined in 15 U.S.C. § 2301(1).

191.   Plaintiff and the other Class members are consumers as defined in 15 U.S.C. § 2301(3).

192.   Defendant is the supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

193.   In connection with the sale of the Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6) (covering written affirmations of fact that "relate[] to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time") as follows:

- Original Rescue Remedy Drops are inherently effective for "Stress Relief," "stress relief remedies," "can reduce everyday stress and help maintain control of your health," "Effective in virtually any situation that causes stress or anxiety," "Helps restore a sense of calm and control," "effective treatment for the whole family," and "For relief of occasional stress;"

- Rescue Remedy Spray is a "Fast Acting Spray," "Safe for the whole family," and inherently effective to "manage your everyday stress," grant "courage and presence of mind," "focus when ungrounded," "patience with problems and people," "balanced mind when losing control," and "softens impact of shock;"

- Rescue Cream contains "Vitamin[s]," "Helps soothe & heal the skin," is "Quickly absorbed," "Helps to promote the healing of irritated or damaged skin," "Effectively repairs and helps protect the skin against environmental influences and other stress factors," and is inherently effective for "both cleansing and emotional support of appearance;"

38

- Rescue Pastilles is inherently effective "[f]or relief of occasional stress;"
- Rescue Sleep Melts is inherently effective as a "Sleep Aid," that "provide[] … relief of occasional sleeplessness caused by stress and repetitive thoughts," and is inherently effective for "Courage and presence of mind," "Focus when ungrounded," "Patience with problems and people," "Balanced mind when losing control," "Softens impact of shock," and "Relief from repetitive thoughts;"
- Rescue Gum is inherently effective for "Stress Relief," "relief of occasional stress," "courage and presence of mind," "focus when ungrounded," "patience with problems and people," "balanced mind when losing control," and "softens impact of shock;"
- Rescue Kids is inherently effective for "Stress Relief for Kids," plus "courage and presence of mind," "focus when ungrounded," "patience with problems and people," "balanced mind when losing control," and "softens impact of shock."

194.   In fact, the Products do not provide relief for any of these ailments or symptoms.

195.   By stating the Products relieve ailments and symptoms as listed above, Defendant breached the Products' express written warranties and violated the statutory rights of Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiff and other Class members in the form of the lost purchase price for the Products.

196.   Plaintiff notified the Defendant in writing of their claims and that Plaintiff was acting on behalf of a putative class.  Ex. 3.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEVENTH CAUSE OF ACTION

### UNJUST ENRICHMENT

#### (On Behalf of Plaintiff and the Class, as Against Defendant)

197.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

198.   As a result of Defendant's false and deceptive advertising, unfair, deceptive, untrue or misleading business practices and misrepresentations and in consideration thereof, during the relevant time period set forth above, the Class members paid money to and conferred a benefit upon Defendant in connection with Defendant's Products sold to Class members, which monies were originally in the Class members' possession.

199.   Defendant received, retained or appropriated these benefits under circumstances that would render it inequitable and unjust to permit Defendant to retain such monies at the expense of the Class members.  *See* Ex. 4 attached hereto. Defendant, as a result of such conduct, became indebted to the Class members for the sums paid to Defendant by Class members as set forth in detail above, with interest thereon.  No such sums have been paid to the Class members.

200.   In fairness, all such monies, including all interest Defendant has earned on such monies while in wrongful possession thereof, should be disgorged from Defendant and paid to Plaintiff and Class members under principles of unjust enrichment. No violation of law or public policy would be promoted by such relief.

201.   As a direct and proximate result of Defendant's conduct resulting in their unjust enrichment, Plaintiff and Class members suffered injury and seek an order directing Defendant to return the amount each of them were improperly induced to pay to Defendant, plus interest thereon, as well as impose a constructive trust over such monies.

## PRAYER FOR RELIEF

202.   Wherefore, Plaintiff, on behalf of herself, all others similarly situated and the general public, pray for judgment against the Defendant as to each and every cause of action, including:

A.   An order declaring this action to be a proper Class Action and requiring Defendant to bear the costs of Class notice;

B.   An order awarding restitution and disgorgement of Defendant's revenues from the Products to Plaintiff and the proposed Class members.

C.   An order awarding damages, and punitive damages, to Plaintiff and the Class against Defendant, as provided by statute or applicable law;

D.   An order awarding attorneys' fees and costs to Plaintiff and the Class;

E.   An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  January 26, 2015

/s/ Ronald A. Marron
Ronald A. Marron
ron@consumersadvocates.com
**LAW OFFICES OF RONALD A.**
**MARRON, APLC**
SKYE RESENDES
ALEXIS M. WOOD
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Attorneys for Plaintiff and the Proposed Class*

*Allen v. Nelson Bach USA Ltd.*, Case No. 3:12-CV-00495 L (NLS)
THIRD AMENDED COMPLAINT

1   I, Gena Ruszecki, declare as follows:

2       1.    I am the Plaintiff in this action.  I make this affidavit as required

3   by California Civil Code Section 1780(d).

4       2.    The Complaint in this action is filed in a proper place for the

5   trial of this action because Defendant is doing business in this county.

6   I declare under penalty of perjury under the laws of the United States that

7   the foregoing is true and correct.

8

9   Dated: January 21, 2015

10

11                              Gena Ruszecki

12

13

14 _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28                      AFFIDAVIT OF VENUE

**<u>Table of Exhibits</u>**

| EXHIBIT NUMBER | EXHIBIT DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit 1 | Product Package Labels | 1-20 |
| Exhibit 2 | Product Pamphlets | 21-24 |
| Exhibit 3 | CLRA Letters | 25-29 |
| Exhibit 4 | Chain Drug Review articles | 30-43 |